86
f89

329
699

AMERICAN EXPRESS COMPANY *v.* RICHARD J. JENNINGS.

1. CONTRACTS. *Breach. Damages.*

A recovery for the breach of a contract should be limited to such damages as may fairly and reasonably be considered as arising naturally from such breach, or to such damages as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made as the probable result of a breach of it.

2. SAME. *Special circumstances. Measure of damages. When known to both parties. When unknown to defendant.*

If in such case the special circumstances under which the contract was made were known to both parties, the damages resulting from a breach of it, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from the breach under the special circumstances so known: but if the special circumstances were unknown to the party breaching the contract, he can only be supposed to have had in contemplation the amount of injury which would arise generally from such a breach, not affected by the special circumstances.

3. SAME. *Notice of special circumstances. When given.*

In order that notice or knowledge of the special circumstances under which a contract was made may increase the damages recoverable for its breach, the same must have been given or acquired at the time or before the contract was made.

4. SAME. *Concrete case.*

Where the owner of a cotton gin sent a piece of machinery, necessary to the operation of his gin, to a machinist for repairs, and the machinist, after repairing it, delivered the same, without disclosing the special circumstances, to a common carrier to be transported to the owner, the carrier is not liable to the owner because of a failure to deliver the machinery:

(a) For special damages arising from the enforced idleness of the gin, nor

(b) For time lost by plaintiff in going to defendant's office to inquire about the machinery.

FROM the circuit court of, second district, Coahoma county.

HON. SAMUEL C. COOK, Judge.

Jennings, the appellee, was plaintiff, and the express company, the appellant, defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

The instructions referred to in the opinion are as follows:

Instructions given for plaintiff:

"No. 1. The court instructs the jury to find for the plaintiff the value of the property consigned to him that belonged to him and was never delivered."

"No. 3. The court instructs the jury, for the plaintiff, that if at the time—to wit, the 16th day of December, 1903—the defendant received from the Southern Express Company certain machinery to be transported by it and delivered to plaintiff at Scobey, Miss., the defendant had notice that the plaintiff's gin and mill were shut down, and would remain idle until such goods were delivered to plaintiff, and that defendant's agent at Scobey agreed with plaintiff that the property was in Mem-

phis, and that defendant would bring it down and deliver it that night or the next morning, and that thereafter defendant, through its agent at Scobey, promised plaintiff that it would be there on the next train, and by successive promises kept plaintiff waiting for the machinery until the early part of January, 1904, and then notified plaintiff that they had lost the machinery, and would not deliver it at all, and plaintiff quickly ordered other machinery in its place, which was promptly sent and promptly received by plaintiff on the 7th day of January, 1904, and that the first machinery was lost by defendant and never delivered to plaintiff, then they will find for plaintiff, not only the value of the machinery lost that belonged to him, but all damages that have accrued to him on account of the delay and loss of the machinery; and, in estimating plaintiff's damages, they should be governed by the fair rental value of the machinery that was shut down, and, in determining the fair rental value, they may take into consideration the season of the year, that the machinery was located in a cotton country, and all the facts and circumstances surrounding the parties, and may also take into consideration any time lost by plaintiff in going to the depot or office of the defendant and making inquiry about the machinery lost."

Instruction No. 4 refused for defendant:

"No. 4. The court instructs the jury that plaintiff cannot recover for the reasonable value of his gin, or any other damages, unless they believe, from a preponderance of the evidence, that the defendant had notice of the importance of the shipment and of its prompt delivery at some time before the shipment had been lost or had been misplaced or miscarried."

*D. A. Scott,* for appellant.

It is conceded that at the time the contract of affreightment was entered into no notice or information of any character whatsoever was given as to the importance of the shipment in

question or as to the importance of its prompt and punctual delivery.

It is well settled that where the carrier has no notice at the time the contract of affreightment is entered into of the importance of prompt and speedy delivery, no special damages can be recovered for the failure to promptly deliver. 3 Wood on R. R. (Minor's ed.), sec. 454; *Pacific Express Co.* v. *Danrell,* 62 Tex., 639; 2 Am. & Eng. Ency. Law (1st ed.), 909; *Thomas & C. Mfg. Co.* v. *Wabash, etc., R. R. Co.,* 62 Wis., 642.

The damages sought to be recovered in this suit were not within the contemplation of the parties at the time the contract of affreightment was entered into between the Southern Express Company and the Adams Machine Company, nor at any other time.

The rule above contended for is clearly announced in the case of *Hadley* v. *Baxendale,* 9 Excheq., 341, and has been universally followed by this court. *Y. & M. V. Ry. Co.* v. *Foster,* 23 South. Rep., 581; *W. U. Tel. Co.* v. *Clifton,* 8 South. Rep., 746; *W. U. Tel. Co.* v. *Rogers,* 9 South. Rep., 823; *W. U. Tel. Co.* v. *Pierce,* 82 Miss., 487 (s.c., 34 South. Rep., 153).

It cannot be seriously contended that the damages sought to be recovered by the appellee were, or could by any possibility have been, within the contemplation of the parties when this consignment of freight was delivered and contract made for its carriage.

In addition to all this, the damages sought and recovered by the appellee were remote, speculative, uncertain, and contingent, and were, therefore, not properly recoverable in this suit.

The carrier is never liable in damages for a breach of contract unless the same naturally and in the usual course of things flow from the breach. *W. U. Tel. Co.* v. *Clifton,* 68 Miss., 307; *Hadley* v. *Baxendale, supra; R. R. Co.* v. *Ragsdale,* 46 Miss., 458; *Alexander* v. *W. U. Tel. Co.,* 66 Miss., 161; *Paducah Lumber Co.* v. *Paducah Water S. Co.,* 25 Am. St. Rep., 536.

Mere notice of special circumstances or of the importance of the shipment in question would not have had the effect of rendering appellant liable for more than ordinary damages; on the contrary, in order to have any such effect, the notice not only must have been given, but it must have been given under such circumstances as to have made it a term of the contract, otherwise no liability for such damage arose when the contract was breached.

If the special circumstances as to the importance of the shipment and prompt delivery were unknown to the appellant, it can only be supposed or assumed to have had in contemplation the injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from a breach of the contract.   13 Cyc., 34, note 88.

*A. J. McCormick,* for appellee.

The gravamen of the declaration in the case at bar is that of neglect, or breach of duty, in the course of the general employment of appellant.  In other words, the action is that of tort, and not for a breach of contract.  "It is settled," says the court in the case of *Waters* v. *Railroad Co.,* 74 Miss., 534, "that in this class of cases plaintiff may waive the contract and sue in tort."  *Heirn* v. *McCaughan,* 32 Miss., 17; *Railroad* v. *Hurst,* 36 Miss., 660.

This was not an action on the contract, but an action on the case, for the further reason that there never was any contract between appellant and appellee.  It appears that under the rule established by the English courts, the first carrier of a series of connecting carriers becomes liable for the entire transportation.  With but few exceptions, the courts of this country have adopted the rule that the liability of the first carrier ends with their delivery to the succeeding carrier.  This rule has been adopted by the courts of Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, New Hampshire, New York, North Carolina, Pennsylvania, Rhode

Island, South Carolina, Texas, Vermont, Virginia, and in the federal courts. It is also the rule in *Mississippi Ry. Co.* v. *Holmes,* 75 Miss., 388; *Crawford* v. *Southern, etc.,* 51 Miss., 222. By making an express provision in the contract with the first carrier, the benefit of all provisions in the contract may be made to inure to the benefit of subsequent carriers, but under the American rule just referred to, these provisions will not so inure unless specially stipulated. *Kansas City Ry. Co.* v. *Sharp,* 64 Ark., 115; *Whitworth* v. *Erie Ry. Co.,* 87 N. Y., 413; *Browning* v. *Goodrich, etc.,* 78 Wis., 391; *Burroughs* v. *Grand Trunk Ry.,* 67 Mich., 351; *McMillan* v. *Mich. Southern,* 93 Am. Dec., 208; *Robinson* v. *New York Steamship Co.,* 63 N. Y., 211; *Martin* v. *American Express Co.,* 19 Wis., 336. It necessarily follows that, so far as this record is concerned, the contract between the Southern Express Company and the Adams Machine Company cannot affect the question of lia- bility. As the record stands, the Southern Express Company could not be held liable; its contract is not in the record, and under the ruling of this court it is *prima facie* not liable itself after delivery. It is presumed that there is nothing in the contract with reference to subsequent carriers, and for a sub- sequent carrier to avail itself of the contract, or anything col- lateral thereto, the contract must be produced and the provision pointed out. The last four cases above cited, in addition to this reason, place it on the further ground that the subsequent carrier cannot avail itself of the provisions of the contract, for the reason that the succeeding carrier is not a party to the contract. It would be rather remarkable if appellant, who is at fault, could be permitted to shield itself behind the cloak of the Southern Express Company, who is not at fault.

If it be conceded that appellant is entitled to the benefit of lack of notice of the special damage which would accrue by reason of the failure to deliver the machinery, there being no notice to the Southern Express Company, it is admitted by

counsel for appellee that the general rule is as stated in the brief of distinguished counsel for appellant—to wit, that no special damage can be recovered for the failure to deliver where the carrier had no notice at the time the contract was entered into of the importance of prompt delivery. But the attention of the court is called to one very important and general exception to this rule. Where the carrier, after receipt of the goods to be shipped, becomes charged with notice of the importance of prompt delivery, then fails to deliver the shipment and fails to notify the consignee of the loss of the goods, then he becomes liable for all special damage which may accrue. And especially is this true in the case at bar. Appellant not only failed to deliver the goods; not only failed to notify appellee of their loss, but actually notified him daily that the machinery would be received that night or the following morning. Had appellant not done this, appellee could have secured other machinery and operated his gin. Appellant waited until the first day of January before it notified appellee of the loss of the shipment.

It makes no difference whether the carrier has notice of the special purpose to which the consignee intends to put the machinery at the time of the contract of affreightment, provided such notice is given it during the period of transportation, and in such event the carrier will be liable for the special damage accruing for unreasonable delay after such notice is given. *Gulf, C. & S. F. Ry. v. Gilbert,* 22 S. W., 760; *Wells v. Battle,* 24 S. W., 353; *Rogan v. Wabash R. R. Co.,* 51 Mo. App., 665; *Priestly v. Ry. Company,* 79 Am. Dec., 369; *Texas Ry. Co. v. Hassell,* 58 S. W., 54.

Cox, J., delivered the opinion of the court.

The appellee here, who was plaintiff below, was engaged during the fall of 1903 in operating a cotton gin in the town of Scobey. Some time near the middle of December he broke a piston rod—the same being necessary to the operation of

his gin machinery—and sent the same, under a hurry order, to the Adams Machine Company, at Corinth, for immediate repair and return.   The rod was repaired and certain other necessary parts added by the Adams Machine Company, and all were delivered to the Southern Express Company, consigned to appellee at Scobey, Miss., marked "C. O. D. $16.00," on the 15th day of December.   The articles so consigned were received by the American Express Company, a connecting line (appellant here and defendant below), at Memphis on December 15th, and on the same day were forwarded to appellee at Scobey, Miss.   They were in some unaccountable way lost in transit, were never found, and consequently never delivered. On January 1st appellee, having been definitely informed that the missing pieces were lost and could not be found, ordered duplicates, which were forwarded to him, and received at Scobey on January 7th.   In the meantime appellee's gin had been standing idle because the machinery could not be run without the piston rod and other repairs which had been lost as above set out.   The Adams Machine Company filed a claim against appellant for the lost shipment when they received the second order from appellee, and later received from appellant $20.50 in full of all damages.   Of this they sent appellee $4.50, the value of the piston rod, which sum, on the advice of his attorney, who had made demand of appellant for the damages suffered by appellee, he returned.   Appellee then sued appellant for damages suffered in consequence of appellant's failure to promptly transport and deliver the piston rod and attachments, and received a verdict and judgment for $419.

The judgment must be reversed.   Instruction No. 1 for plaintiff is erroneous, in that it assumes that the property consigned to him belonged to him, when the evidence, as to the greater part of it, shows the contrary.

Instruction No. 3 for plaintiff is erroneous, in that it authorizes the jury, in determining the rental value of his machinery,

to take into consideration any time lost by plaintiff in going to the depot or office of the defendant and making inquiry about the machinery lost. The time so lost could have no relation whatever to the rental value of the machinery, and is not properly an element of damage in this case.

Instruction No. 4 asked for defendant should have been given. Defendant was entitled to even a more favorable statement of the law than was contained in this refused instruction. Certainly it could not be made liable for special or extraordinary damages unless notice of the importance of the shipment and prompt delivery had been made at some time before the shipment had been lost or had been misplaced or miscarried.

Instruction No. 5 for defendant, as modified by the court, is clearly erroneous; but, as the original instruction is not itself correct, in the absence of any proof in the record that the contract of affreightment with the Southern Express Company was a through contract, of whose terms the connecting carrier, the American Express Company, had the right to avail itself, defendant could not complain of the modification.

Inasmuch as the case must be tried anew, it is proper that we state the law with regard to the measure of damages applicable to this case and others of like character. In the leading case of *Hadley* v. *Baxendale,* 9 Excheq., 341—a case in its facts very much like the case at bar—the court said: "Now, we think the proper rule in such a case as the present is this: Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally (*i. e.,* according to the usual course of things) from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it.

Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of the contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them." This luminous statement of the law as to special or extraordinary damages has been very generally adopted in the jurisdictions administering the common law. 8 Am. & Eng. Ency. Law, 584, 585, notes; 1 Sutherland on Damages (3d ed.), sec. 45; 14 Cyc., 34; 3 Wood on R. R., 454; 2 Beach on Railways, sec. 948. It was adopted by this court in the leading case of *V. & M. R. R.* v. *Ragsdale,* 46 Miss., 458, and has been uniformly adhered to since. The rule, as above stated, is established not only in authority, but also in reason. If one of the parties to a contract is to be made liable for extraordinary damages, it is right that before the contract is made he should have notice of the exceptional circumstances that may warrant them, in order that he may decline, if he wish, to make a contract to which such enhanced liability may attach or may make special stipulations for increased compensation. He has the right to do either, and is entitled to notice to that end. If he, however, enter into the contract, or if, being a common carrier, he receive an article for transportation, after having received from the other party notice of

the special circumstances, he is conclusively presumed to have contracted with reference to the enlarged liability. It is also to be remarked that he is entitled to notice of the special circumstances, in order that he may use special diligence and employ extra precautions to guard against the increased risk.

Counsel for appellee, while conceding the correctness of the rule as a general proposition, contends that "it makes no difference whether the carrier had notice of the special purpose to which the consignee intends to put the machinery at the time of the contract of affreightment, provided such notice is given it during the period of transportation, and in such event the carrier will be liable for special damage accruing for unreasonable delay after such notice is given." The only one of the five cases cited in support of this proposition which seems clearly to support it is the case of *Gulf, C. & S. F. Ry.* v. *Gilbert* (Tex. Civ. App.), 22 S. W., 760.; but the supreme court of Texas, on a rehearing of this case, admitted error in the former decision, and delivered a strong opinion repudiating the modification of the rule contended for by counsel, and declaring that "it is not enough to give notice to the carrier after the contract is made, and the shipment has started in its transportation, because the liability of the carrier cannot be increased by the subsequent knowledge of facts that did not exist in the contemplation of the parties at the time the engagement was entered into. It then became an effort upon the part of one of the contracting parties to inject a stipulation into the contract after it was entered into that increases the liability of the other, that was not mutually considered when the engagement was made." *Gulf, C. & S. F. Ry. Co.* v. *Gilbert* (Tex. Civ. App.), 23 S. W., 320. The modification contended for it is not supported by authority, is not founded in reason, and will not receive the sanction of this court.

It is contended, again, by counsel for appellee, that the rule requiring notice of special circumstances in order to the recov-

ery of extraordinary damages does not apply in this case, because the gravamen of the declaration is that of neglect or breach of duty in the course of the general employment of appellant, the action being of tort, and not for a breach of contract.    We cannot concur in this.    Damages arising from merely negligent delay in transportation of freight by a common carrier are generally and correctly treated as arising *ex contractu.*    The rule for their admeasurement is well established in our jurisprudence, and cannot be modified, and the damage recoverable largely increased, by the simple expedient of changing the form of the action.    Especially must this be true in a jurisdiction that pays but little attention to the forms of pleadings, but looks to the substance of the cause.    This court, in an action *ex delicto,* has held that the rule announced in *Hadley* v. *Baxendale* would be applicable in case of failure to carry and deliver freight in reasonable time, where such failure arose from the mere negligence of the carrier, but that wanton and gross neglect of their duties by common carriers, and reckless disregard of the rights of shippers, and willful refusal to deliver, if alleged in the declaration and sustained by the proof, would authorize a verdict not only for compensatory, but also for exemplary, damages.    *Silver* v. *Kent,* 60 Miss., 124.    This limitation of the general rule is eminently correct, but neither the averments of plaintiff's declaration nor the facts in evidence bring his case within it.

If upon another trial of this case it shall be developed that the Southern Express Company made a contract for through shipment, contracting for both itself and its connecting line, the American Express Company, special damages will not be allowed unless it shall appear that, before the articles were received by the Southern Express Company for shipment, it had notice of the special circumstances of plaintiff's situation and of the great importance to him of prompt carriage and delivery.    If it shall appear that the Southern Express Company

contracted only for itself, and not for itself and connecting line, then special damages will not be allowed unless it shall appear that before the articles were received by defendant, the American Express Company, it had notice, at the place where it received the shipment, of the special circumstances of plaintiff's situation and of the great importance to him of prompt carriage and delivery. Notice to defendant's agent at Scobey at the time of the shipment of the piston to the Adams Machine Company for repairs will not suffice.

*Reversed and remanded.*